IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| COREY MUNFORD | : | No. 15-376-7 |

MEMORANDUM

PRATTER, J.  JANUARY 12, 2021

Corey Munford seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The primary basis for his motions is the COVID-19 pandemic and attendant conditions relating to the pandemic as they may affect him. The Government opposes Mr. Munford's motions. Mr. Munford also requests the appointment of counsel. For the following reasons, the Court denies Mr. Munford's motions for compassionate release and his requests for the appointment of counsel.[1]

BACKGROUND

I.  Mr. Munford's Criminal Conduct

From late 2009 through early 2012, Mr. Munford was part of a large-scale drug trafficking organization that brought in large quantities of cocaine and marijuana to the Philadelphia area. (Doc. No. 771 at 1.) In May 2016, Mr. Munford was charged in a superseding indictment with conspiracy to distribute five kilograms or more of cocaine and 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(A) (Count 1); conspiracy to commit

---

[1]  Prior to filing his motions for compassionate release, Mr. Munford sent three letters requesting the appointment of counsel. (Doc. Nos. 724, 734, and 737.) Mr. Munford then filed his first motion for compassionate release in September 2020. (Doc. No. 737.) About two months later, he filed a second motion for compassionate release, which the Court construes as a supplement to his first. (Doc. No. 763.) In these motions, Mr. Munford also requested the appointment of counsel. Mr. Munford also sent a letter in December 2020 seeking an update on his motions for compassionate release and renewing his request for appointment of counsel. (Doc. No. 776.)

1

money laundering, in violation of 18 U.S.C. § 1956(h) (Count 12); and criminal forfeiture under 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1). (Doc. No. 176.)

In May 2017, pursuant to a written plea agreement, Mr. Munford pled guilty to the above drug and money laundering conspiracy counts. (Doc. No. 379.) In December 2017, the Court sentenced Mr. Munford to 150 months' imprisonment to be followed by five years of supervised release. (Doc. No. 471 at 2.) The pre-sentence report (PSR) does not reflect that Mr. Munford had diabetes at the time of sentencing or whether his physical health was raised as an issue. Mr. Munford states in his initial motion that he was not diagnosed with diabetes until 2019. (Doc. No. 737 at 1.) His reported weight at sentencing was similar to his current weight. PSR ¶ 190-91.

Mr. Munford is currently serving his sentence at FCI Loretto with an anticipated release date of November 2028. He has served approximately 34 months and has credit for good time conduct of three months, for a total time credit of approximately 37 months. (Doc. No. 771 at 5.) Mr. Munford has committed three disciplinary infractions while in custody. In 2018, he failed to attend GED classes and was absent from an assignment. In early 2020, he possessed a hazardous tool. (Doc. No. 771 at 5.)

## II.     Mr. Munford's Request for Compassionate Release

On July 29, 2020, Mr. Munford submitted a request for compassionate release to his facility's warden. His request was based on two medical conditions: Type 2 diabetes and a body mass index (BMI) of 43.3, and the risk presented should he contract COVID-19. The warden denied Mr. Munford's request on August 3, 2020.

In early September 2020, Mr. Munford submitted a *pro se* motion for compassionate release based on the same conditions listed above. (Doc. No. 737.) Two months later, Mr. Munford filed a second motion for compassionate release additionally claiming that his wife

had contracted COVID-19 and had been hospitalized for multiple days. (Doc. No. 763.) As a result, he asserted that he was the only available caregiver for a minor child.[2] (Doc. No. 763.)

Mr. Munford's BOP medical records show that he is 32 years old, with Type 2 diabetes and a BMI of 42.2. (Doc. No. 772 at 122, 127.) These conditions appear appropriately controlled, and Mr. Munford receives diabetes medication from his institution. (Doc. No. 763 at 10.) Mr. Munford is otherwise fully ambulatory and engages in all normal activities of daily living. (Doc. No. 771 at 6.) Notably, Mr. Munford contracted COVID-19 in late November 2020. He remained asymptomatic and is now deemed recovered. (Doc. No. 771 at 6.)

### III. BOP's Response to the COVID-19 Pandemic

BOP's "highest priority [is] to continue to do everything [it] can to mitigate the spread of COVID-19 in [its] facilities,"[3] and it has taken significant measures to protect the health of the inmates in its charge. These measures, among other things, include severely curtailing visitation, limiting the movement of inmates with special attention to social distancing, and screening and isolating new inmates. As directed by the Attorney General, BOP is also prioritizing the use of statutory authority to place eligible prisoners in home confinement.[4] Pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, BOP may also "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" in the event the Attorney General finds that emergency conditions will materially affect the functioning of

---

[2] The Government notes that Mr. Munford describes the minor as his child, but it appears that he is the minor's stepfather. The PSR shows that Munford married his wife in 2016 and they do not have any children, but his wife has a child (who was five years old at the time of the December 2017 PSR) from a prior relationship and the child's biological father is not a part of her life. PSR ¶ 186.

[3] BOP, *BOP Modified Operations* (last updated Nov. 25, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 11, 2021).

[4] This authority includes the ability to place an inmate in home confinement during the last six months or the remaining 10% of a sentence, whichever is shorter, 18 U.S.C. § 3624(c)(2), and to move elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g) to home confinement.

3

BOP. Pub. L. No. 116-136 § 12003(b)(2). In April 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that have seen the greatest incidence of COVID-19 transmission thus far.

BOP's efforts at combating the effects of the pandemic at FCI Loretto were successful for most of 2020, with a limited number of positive cases in the inmate population. (Doc. No. 771 at 7.) In November 2020, the facility experienced a large outbreak and almost all of its inmates were infected. (Doc. No. 771 at 7.) FCI Loretto houses 841 inmates. As of January 11, 2021, there are currently no COVID-positive inmates. Sixteen staff members are currently COVID-positive.[5] Overall, 726 inmates and 46 staff members have recovered from COVID-19 at FCI Loretto. There have been no COVID-19 related deaths at FCI Loretto.

## LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007). However, a defendant can move to reduce his or her term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). In order to do so, the defendant must first request that the BOP file a motion on his or her behalf,[6] which can only occur after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

---

[5] The data is current as of January 11, 2021, according to the BOP website, available at https://www.bop.gov/coronavirus.

[6] "The recently enacted First Step Act allows 'incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons.'" *United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (quoting *United States v. Mark*, No. 10-cr-742-1, 2020 WL 5801495, *1 (E.D. Pa. Sept. 29, 2020)).

4

In the event the moving defendant complies with the exhaustion requirement, a court may reduce his or her term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with the Sentencing Commission's applicable policy statements,[7] and that the § 3553(a) factors favor reduction. Pursuant to the Sentencing Commission's relevant policy statement, a court must also find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

Although Congress has not defined the term "extraordinary and compelling," the Sentencing Commission has issued an application note to its relevant policy statement which provides guidance for defining the conjunctive term. Application Note 1 provides, in pertinent part, that a defendant's non-terminal illness may constitute an extraordinary and compelling justification where "the defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

A court considers multiple factors under 18 U.S.C. § 3553(a), including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal

---

[7] Despite § 3582(c)(1)(A) mandating that a reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission," "the policy statement is now clearly outdated" in light of the Sentencing Commission's failure to update its policy statement to account for the changes imposed in light of the amendment to § 3582(c)(1)(A) by the First Step Act of 2018. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. Apr. 1, 2020). Therefore, although the policy statement undoubtedly provides helpful guidance, it "does not limit the Court's independent assessment of whether 'extraordinary and compelling reasons' exist under § 3582(c)(1)(A)(i)." *Id.* at 398.

5

conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The defendant bears the burden of showing that a reduction in sentence is proper. *See United States v. Rengifo*, No. 13-131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

## DISCUSSION

### I. Compassionate Release

The Court certainly does not minimize the critical health risk posed by COVID-19. But as very concerning as the current pandemic is, resolving Mr. Munford's motion still requires the Court to take into serious consideration the limits imposed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Munford bases his request for relief on his diabetes, BMI, and the need to care for a minor child.

Although COVID-19 is a dangerous, and sometimes lethal, virus for all individuals, the Centers for Disease Control and Prevention (CDC) has deemed certain people with specific underlying medical conditions and the elderly to be at a heightened risk of severe illness or death.[8] "While this court is not bound by the CDC's guidelines, it follows suit with many other district courts who have turned to the guidance as reliably informative." *United States v. Perri*, No. 15-cr-486, 2020 WL 6324384, at *2 (E.D. Pa. Oct. 28, 2020) (listing cases).

But for COVID-19, Mr. Munford would likely present no basis at all for compassionate release. In light of the COVID-19 pandemic, Mr. Munford asserts that he is more susceptible to complications from COVID-19 due to his Type 2 diabetes and BMI over 40. (Doc. No. 773 at 1.)

---

[8] *See People at Increased Risk*, Centers for Disease Control and Prevention (Jan. 4, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Jan. 11, 2021).

6

The Government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." *See* U.S.S.G. § 1B1.13 n.1. The CDC recognizes both Type 2 diabetes and severe obesity (a BMI greater than 40) as underlying medical conditions that put an individual at an "increased risk of severe illness" from COVID-19.[9] Mr. Munford's BOP medical records confirm that he has Type 2 diabetes and that his BMI is over 40.

However, courts routinely deny motions for the extraordinary remedy of compassionate relief based on potential COVID-19 risk factors. *See, e.g.*, *United States v. Moldover*, No. CR 14-637, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (defendant's asthma, hypertension, and obesity did not constitute extraordinary and compelling reason for release); *United States v. Ackerman*, No. CR 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (compassionate release not warranted because "there is no there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care"). Mr. Munford has not established that his medical conditions—although problematic—are not monitored and appropriately managed with medication at FCI Loretto.

Furthermore, despite the increased risk these conditions pose, Mr. Munford has actually contracted COVID-19 and has had the good fortune to have recovered without presenting any apparent symptoms. (Doc. No. 771 at 12.) The risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. *See, e.g.*, *United States v. Wiltshire*, No. CR 11-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020). Presently, there is no scientific

---

[9] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (Dec. 29, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 11, 2021).

7

consensus on the risk of reinfection. Because COVID-19 poses a general threat to every non-immune individual, the mere existence of the disease does not provide a basis for a sentence reduction on its own. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). This Court is unable to find a case where compassionate release was granted to a defendant who recovered from COVID-19 and was asymptomatic. To the contrary, other "[c]ourts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who have already contracted and recovered from the virus." *See United States v. Hames*, No. 4:09-CR-39(1), 2020 WL 6585665, at *1 (E.D. Tex. Nov. 10, 2020) (collecting cases); *United States v. Peuse*, No. 17-CR-00598-LHK, 2020 WL 5076356 (N.D. Cal. Aug. 24, 2020) (same).

In his most recent compassionate release motion, Mr. Munford states that his wife contracted COVID-19, was out of work for weeks, and had been "hospitalized for multiple days before the virus turned into pneumonia." (Doc. No. 763 at 5.) He does not substantiate these claims with any medical documentation or other evidence. Nevertheless, as a result, Mr. Munford asserts that he is the "only available caregiver for my minor child." (Doc. No. 763 at 5.) The Court is certainly sympathetic to Mr. Munford's wife's situation. However, Mr. Munford's submission suggests that his wife is no longer hospitalized and has likely recovered. Mr. Munford did not explain to the Court who cared for the minor child while Mr. Munford's wife was in the hospital. In any case, as of now, it does not appear that Mr. Munford's wife is currently incapacitated or otherwise unable to care for the child, or that Mr. Munford would be the child's only caregiver. Thus, the situation concerning a child does not provide an extraordinary and compelling reason for Mr. Munford's compassionate release.[10]

---

[10]  *See* U.S.S.G. § 1B1.13 n.1(C) (defining family circumstances as compelling in the case of the "death or incapacitation of the caregiver of the defendant's minor child," or "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.").

8

As to the current situation at FCI Loretto, the Court in no way minimizes the threat that COVID-19 poses. There was an outbreak at FCI Loretto in November 2020, and given the extent of that outbreak, almost all inmates were infected. That said, as mentioned above, as of January 11, 2021, FCI Loretto reports zero inmates and 16 staff members are COVID-positive.[11] The COVID-19 pandemic remains a fluid and serious situation, and the BOP website continues to provide transparent information with the community about positive cases and recoveries.

Even if Mr. Munford presented extraordinary and compelling reasons warranting his compassionate release, consideration of the § 3553(a) factors necessitates a denial of Mr. Munford's motion. He has failed to show how releasing him before he serves the full term (or a much more significant portion) of his sentence would align with the statutory sentencing factors, notably the seriousness of his offense, the need to promote respect for the law, the need to provide just punishment for the offense, and the need to deter others from similar criminality. *See* 18 U.S.C. § 3553(a).

Mr. Munford was a key participant in a significant drug trafficking organization. He conspired, among other things, to distribute a substantial amount of cocaine and marijuana, and to launder money. (Doc. No. 771 at 14.) These crimes were also committed while Mr. Munford was under supervision in two state cases. (Doc. No. 771 at 14.) While the Court certainly commends Mr. Munford for completing several programs while incarcerated and his "new respect for the law," it is clear on an objective basis that he still continues to present a danger to the community. (Doc. No. 737 at 2-3.) Despite Mr. Munford's underlying medical conditions, his crimes were serious, and an early release would not provide just punishment or serve as a deterrent to others. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (noting district court reasonably

---

[11] The data is current as of January 11, 2021, according to the BOP website, available at htttps://www.bop.gov/coronavirus.

9

concluded early release not warranted where defendant's "crimes were extraordinarily serious" and required "a significant period of incarceration").

Mr. Munford has not yet served a significant portion of his sentence. Accounting for good conduct time, he has served approximately 37 months, or just under 25%, of his 150-month sentence. An early release would be contrary to the § 3553(a) factors. *See United States v. Torres*, No. 18-cr-414, 2020 WL 3498156, at *10 (E.D. Pa. June 29, 2020) (denying compassionate release for 36-year-old inmate with mild asthma due to seriousness of his crime and having served 15% of 63-month sentence); *United States v. Shulick*, No. 16-cr-428, 2020 WL 3250584, at *5 (E.D. Pa. June 16, 2020) (denying compassionate release where defendant had served 19 months of a 60-month sentence for embezzlement, fraud, and filing false tax returns).

## II. Appointment of Counsel

As noted above, Mr. Munford sent three letters requesting the appointment of counsel to help him file a motion for compassionate release. (Doc. Nos. 724, 734, and 737.) Since then, Mr. Munford has filed two *pro se* motions for compassionate release, in which he also requested the appointment of counsel. (Doc. Nos. 737, 763.) While indigent civil litigants have no constitutional or statutory right to appointed counsel, a district court has the authority to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). "As a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002). If a claimant overcomes this threshold hurdle, then a court must consider several factors identified by the Third Circuit, including:

    1. the plaintiff's ability to present his or her own case;
    2. the difficulty of the particular legal issues;
    3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

      4. the plaintiff's capacity to retain counsel on his or her own behalf;
      5. the extent to which a case is likely to turn on credibility determinations, and;
      6. whether the case will require testimony from expert witnesses.

*Id.* at 499 (citing *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir.1993)). Finding Mr. Munford's motions for compassionate release to arguably have some merit, the Court will now analyze each *Tabron* factor.

First, Mr. Munford has been able to present his own arguments regarding compassionate release. He filed two motions for compassionate release, one in September 2020, and another in November 2020, in which he included several attachments. Second, the legal issues involved here are relatively straightforward. Mr. Munford sought relief under 18 U.S.C. § 3582(c)(1)(A). In his first motion, Mr. Munford explained that his diabetes and high BMI presented extraordinary and compelling circumstances for his release. (Doc. No. 737.) In his second motion, Mr. Munford noted that his wife was hospitalized due to contracting COVID-19 and that he was the only available caregiver for a minor child. (Doc. No. 763 at 5.) Thus, Mr. Munford was able to clearly articulate the reasons why he thought he was entitled to compassionate release. Third, the Court is unaware what factual investigation would be necessary here and therefore, this factor does not weigh in favor of appointment of counsel. Fourth, because the Court does not know whether Mr. Munford could retain counsel on his own behalf, given that he is currently incarcerated, the Court will assume that this factor weighs in his favor. As to the fifth and sixth factors, there is no indication that Mr. Munford's request for compassionate release is based on credibility determinations or that any expert testimony would be required.

Because only one, if any, of the *Tabron* factors weighs in favor of the appointment of counsel, the Court finds appointment of counsel inappropriate and will deny Mr. Munford's requests.

## Conclusion

For the foregoing reasons, the Court denies Mr. Munford's motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and his requests for counsel. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**